United States District Court
District of Connecticut
FILED AT HARTFORD

Kevin F. Rowe, Clerk

By
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

—————————————————

ROBERT T. PARKER,                                :
                                                 :       CIVIL ACTION NO. : 3:03CV930(CFD)
       PLAINTIFF,                                :
                                                 :
V.                                               :
                                                 :
HARTFORD PARKING AUTHORITY,                      :
and                                              :
                                                 :
MERYTH DEAN WILLIAMS,                             :
Chairperson, Hartford Parking Authority          :
in her official and individual capacities,       :
and                                              :
                                                 :
SERAFIN MENDEZ MENDEZ                             :
Treasurer, Hartford Parking Authority            :
in his official and individual capacities,       :
                                                 :
       DEFENDANTS                                :       January 13, 2004
                                                 :

—————————————————

**SECOND AMENDED COMPLAINT**

**JURISDICTION**

1.      This is a civil action brought by the plaintiff against the defendants alleging

violations of the plaintiff's rights to free speech as protected under the First and Fourteenth

Amendments to the U.S. Constitution and Sections 3, 4 and 14 of Article First of the Connecticut

Constitution, as enforced through 42 U.S.C. §1983 and C.G.S. §31-51q.   The action seeks

monetary and equitable relief, punitive damages, attorneys' fees and costs.

2.      This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §1331

-1-

and §1343(3).  With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that the claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. §1391(b) because the events giving rise to the claims occurred in Connecticut.

## PARTIES

4.     The plaintiff, Robert T. Parker (hereinafter called "Parker" or the "Plaintiff"), is a citizen of the United States who resides in West Hartford, Connecticut.  At all times relevant herein, Parker was employed as the Controller of the defendant, Hartford Parking Authority.

5.     The defendant, Hartford Parking Authority (hereinafter called the "Parking Authority" or the "defendant"), with offices at 155 Morgan Street, Hartford, Connecticut, is a governmental agency established in December 1998 by a City Council ordinance that amended the Hartford Municipal Code. This ordinance was adopted pursuant to Chapter 100, C.G.S. §7-202, of Connecticut General Statutes. This State statute permits towns and municipalities to create parking authorities. As such, the Hartford Parking Authority is a separate "body corporate and politic" to the municipality of Hartford.

6.     As currently authorized under Chapter 10 of the Hartford Municipal Code, the Hartford Parking Authority (hereinafter called "HPA" or the "Authority") is responsible for creating, establishing, maintaining, and operating the City's dedicated parking facilities. Under this ordinance, the Hartford Parking Authority oversees parking facilities and is responsible for operation of the Church Street, MAT, and new Morgan Street Garages. The Authority depends upon the revenue from these facilities to pay for obligations generated by the sale of City of

Hartford Parking System Revenue Bonds and other obligations from the City of Hartford and State of Connecticut.

7.     The Hartford Parking Authority is governed by five members who are nominated by the Hartford City Council and appointed by the City Manager. The Authority adopted a set of by laws pursuant to the Hartford Municipal Code §10-7. Further, it created a set of Personnel Rules and Regulations ( the "Authority Personnel Rules"), patterned on the City of Hartford Personnel Rules and Regulations. These rules provide a standard operating procedure for the Authority and provide direction on benefits and personnel procedures by those employed by the Authority. The Authority Personnel Rules govern the appointment, promotion, layoff, removal and discipline of Authority employees.

8.     At all times relevant herein, the defendant, Meryth Dean Williams, was the Chairperson of the Hartford Parking Authority. Williams is sued in her individual and official capacities.

9.     At all times relevant herein, the defendant, Serafin Mendez Mendez, was the Treasurer of the Hartford Parking Authority. Mendez is sued in his individual and official capacities.

## STATEMENT OF THE CLAIMS

10.     In February 1997, the Parking Authority awarded a contract to Connecticut Parking Services Inc, a/k/a Connecticut Parking Services (hereinafter "CPS") to operate one of its facilities, known as the MAT Garage. The owner of CPS is Carlos Lopez, who enjoys a close

relationship with the defendant Mendez including the exchange of gifts and regular dining out together.

11. Between 1997 and April 2003 the Authority raised issues about the performance of CPS and in particular the way CPS handled finances on behalf of the Authority and the reporting of financial income, as outlined in part in two separate audits (the "Audits") conducted by the City of Hartford. CPS filed suit in Connecticut Superior Court in an attempt to divert attention from the deficiencies raised by the Audits.

12. In March 2002, the Parking Authority used an agency to employ Parker as a temporary employee.

13. In June 2002, the Parking Authority appointed Parker as Controller. In that position, Parker was responsible for establishing and maintaining a revenue collection, depositing, reporting and accounting system for the revenues of the Parking Authority.

10. Between June 2002 and May 15, 2003, Parker performed his job as requested by the Authority, including but not limited to attempts to resolve the outstanding issues about the way CPS handled finances on behalf of the Parking Authority. These finances involved matters of public interest for several reasons, including but not limited to, the dependence on revenue for the Parking Authority to pay its bond holders.

11. In April and May 2003, Parker learned that the Parking Authority was in the process of negotiating an agreement with CPS and its President, Carlos Lopez, which would result in the potential of extending the CPS contract to manage the MAT Garage and pay

-4-

additional funds to CPS

12.    After discovering that these negotiations were taking place, Parker began complaining verbally and by written memo to Parking Authority officials, including Mendez and Williams because, absent resolution of various issues raised by the audits and by his review of financial reports submitted by CPS, he believed that the proposed contract extension was not in the public interest.

13.    As part of his complaints, Parker believed that the terms of the proposed contract with CPS conflicted with some of the requirements in the bonding agreements that the Parking Authority had signed.

14.    Both Williams and Mendez and other Parking Authority officials ignored his opinions and refused to address Parker's statements and concerns.

15.    At a Parking Authority public hearing on May 14, 2003, at which the Parking Authority had scheduled a vote to approve the CPS contract extension, Parker again attempted to raise his concerns by trying to speak at the hearing.

16.    Defendant Williams refused Parker's request to speak about his concerns. Parker then left the meeting.

17.    After Parker left, the Parking Authority voted to extend the CPS contract intending to settle the aforementioned lawsuit initiated by CPS.

18.    On May 14, 2003, Mendez and Williams had also arranged to change the locks on Parker's office, without notice to Parker. The next day, May 15, 2003, after Parker reported for work, Williams informed him that she and Mendez, acting on behalf of the Parking Authority,

-5-

had decided to suspend him.

19.     After suspending Parker on May 15, 2003, Williams then refused to allow Parker to return to work or to gain access to any of the business items in his office.

20.     Williams told Parker that the Parking Authority had taken these actions arising from Parker's attempts to express his objections to CPS management practices and the proposed contract extension with CPS.

21.     Parker spoke out about Parking Authority business practices with regard to CPS, which are matters of public concern, including, but not limited to:

    (a)     CPS had previously violated provisions of its contract with the Parking Authority;

    (b)     the financial incentives in the contract would result in a loss of revenue to the Parking Authority in excess of $700,000.00 over the life of the proposed contract and

    (c)     the proposed contract results in a parking scheme that is inconsistent with the Parking Authority's previously-stated goals for managing City parking.

22.     On September 5, 2003, continuing its violations of its Personnel Rules, without any notice, the HPA terminated Parker's employment. Defendant Williams later tried to deny that the action stemmed from the Parker's previous attempt to speak at the meeting. Williams falsely claimed that the HPA terminated Parker because of his "threatening manner" when Parker left the May 14th meeting. Williams further falsely claimed that Parker damaged property of the HPA upon leaving the premises. The stated basis for the action of termination reasoning was a pretext and false and maligned Parker publicly with the intent to deny Parker the

-6-

opportunity to deny or otherwise challenge the claim. The defendants later provided notice to Parker that they terminated its employment of him approximately one week later.

23.     During the course of Parker's employment, the defendants' Personnel Rules and Policies required that they have just cause before taking any discipline against him.

24.     Such Personnel Rules and Policies constituted a contract between the defendants and Parker that limited the defendants' authority to issue serious discipline against him or to terminate him without just cause.

25.     Prior to taking the discipline against Parker as outlined herein, the defendants did not have just cause.

26.     Further, prior to implementing the serious discipline against Parker as outlined in this complaint, the defendants failed to provide Parker with a pre-disciplinary hearing and/or a pre-termination hearing sufficient to satisfy the requirements of due process. The defendants also failed to provide Parker with a prompt post-termination hearing before a fair and neutral fact finder.

27.     The defendants' decision to suspend Parker and to prevent him from gaining access to his office or from otherwise performing his duties as Controller, and their decision to terminate his employment without any pre or post termination hearings, and their decision to falsely accuse him of damaging property belonging to the HPA constituted discipline against Parker in violation of its Personnel Rules for speaking out regarding these matters of public concern.

28.    As a result of the defendants' actions, Parker has lost benefits and other perquisites of his position as Controller.

29.    The defendants' actions were under color of law and custom, policy and/or practice implemented by the defendants' policy makers with final decision-making authority, including Williams and Mendez.

30.    The defendants' actions intentionally violated Parker's clearly-established federal and state rights to free speech, and his protected property rights as set forth in the Authority's Personnel Rules, and due process under the First and Fourteenth Amendments to the U.S. Constitution and Sections 3, 4 and 14 of Article First of the Connecticut Constitution, as protected by 42 U.S.C. §1983 and C.G.S. §31-51q.

31.    As a result of the defendants' unlawful conduct, Parker has suffered damages in the form of ostracism, lost benefits, and other attendant rights, privileges and conditions of employment, and has suffered emotional distress, anxiety, embarrassment, mental anguish and loss of enjoyment of life.

32.    Williams' and Mendez's actions, as outlined above, were motivated by malice and ill will toward Parker and/or by reckless indifference to Parker's federally-protected rights and rights under C.G.S. §31-51q.

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff demands that this Court:

1.     Issue a judgment for the plaintiff declaring that the defendants have violated the plaintiff's free speech rights protected under the First and Fourteenth Amendments to the U.S. Constitution, Sections 3, 4 and 14 of Article First of the Connecticut Constitution, and as enforced through 42 U.S.C. §1983 and C.G.S. §31-51q;

2.     Award the plaintiff monetary compensation for any and all lost benefits of his employment;

3.     Order the defendants to reinstate the plaintiff to his position with the defendants and\or award him front pay;

4.     Award the plaintiff compensatory and other damages as set forth under 42 U.S.C. §1983 and C.G.S. §31-51q;

5.     Award the plaintiff attorney's fees;

6.     Award the plaintiff costs for bringing this action and pre- and post-judgment interest;

7.     Award the plaintiff punitive damages against the defendants Williams and Mendez;

8.     Award the plaintiff any other legal or equitable relief that the Court deems appropriate.

## REQUEST FOR TRIAL BY JURY

The plaintiff respectfully requests a trial by jury as to all claims to which he is entitled.

Respectfully submitted,

THE PLAINTIFF,
ROBERT T. PARKER

By: _____
Eliot B. Gersten (ct14632)
GERSTEN & CLIFFORD
214 Main Street
Hartford, CT 06106
Telephone No. (860) 527-7044
Fax No. (860) 527-4968
E-mail: EliotG@gersten-clifford.com
His Attorney

- and -

By: _____
Jonathan L. Gould, Esq. (ct 05237)
Law Offices of Jonathan L. Gould
214 Main Street
Hartford, CT 06106
Tel: 860-278-9115
Fax: 860-278-9124
E-mail: jgould@igc.org
His Attorney

-10-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, via regular U.S. Mail, postage prepaid, to all counsel and pro se parties of record on January 16, 2004 as follows:

Jill Hartley, Esq.
Michael G. Albano
Sabia & Hartley, LLC
190 Trumbull Street, Suite 202
Hartford, CT 06103

Stanley Cohen, Esq.
Cohen Auger Burns & Hard
39 Grand Street
Hartford, CT 06106

Eliot B. Gersten