UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT T. PARKER | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:03cv 930 (CFD) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD PARKING AUTHORITY and | : | |
| MERYTH DEAN WILLIAMS, Chairperson, | : | |
| Hartford Parking Authority in her official | : | |
| and individual capacities and | : | |
| SERAFIN MENDEZ MENDEZ, Treasurer, | : | |
| Hartford Parking Authority in his official | : | |
| and individual capacities, | : | |
|     Defendants. | : | JUNE 25, 2004 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
ENFORCE SETTLEMENT AGREEMENT**

## I. INTRODUCTION

Plaintiff's Motion To Enforce Settlement Agreement dated June 16, 2004 (the

"Motion") is baseless and should be denied by this Court because, contrary to Plaintiff's

assertion, no "oral settlement agreement" was ever "reached under the supervision of Judge

Smith."[1]  On the contrary, the settlement talks that continued between the May 12th settlement

conference (the "Settlement Conference") and May 17th culminated with the Corporation

---

[1]    Plaintiff's Memorandum Of Law In Support of The Plaintiff's Motion To
Enforce Settlement Agreement ("Memorandum"), at p. 2.

Counsel for the City of Hartford's[2] ("Corporation Counsel") representation that he would merely relay to the Hartford Parking Authority board ("HPA board") Plaintiff's demand of $63,000.00 and recommend that the HPA board pay same as part of a settlement.  It was understood by all parties during the course of these "oral settlement discussions" that such discussions could not result in any contract because approval of any terms tentatively agreed to was required by a vote of the HPA board.  Given the fact that the "oral settlement discussions" ended before the HPA board voted to approve any settlement and with nothing more than Corporation Counsel's assurance that he would take Plaintiff's settlement demand to his client, no oral settlement agreement between the parties was or could have been reached.

In the unlikely event that this Court construes the parties' oral settlement discussions as sufficient to constitute an oral agreement, any such agreement is unenforceable as Defendant, the Hartford Parking Authority (the "HPA"),[3] never intended to be bound by an oral agreement. Indeed, even the most cursory review of correspondence between the parties and the resolutions by the HPA board and the Hartford Court of Common Council ("City Council") reveals that

---

[2]     Attorney John Rose, Jr.

[3]     The HPA undertook efforts to settle all claims against all Defendants, including the Individual Defendants, Meryth Dean Williams and Serafin Mendez Mendez. For this reason, Meryth Dean Williams and Serafin Mendez Mendez had no involvement in any of the settlement discussions between Plaintiff and the HPA.

Plaintiff cannot establish any of the factors warranting Court enforcement of an oral agreement.

Specifically, Plaintiff cannot show that the HPA failed to expressly reserve its right not to be

bound in the absence of an acceptable written settlement agreement given the HPA board's,

Corporation Counsel's and the City Council's repeated insistence, at all relevant times, upon a

fully executed settlement agreement containing all terms and conditions deemed appropriate by

Corporation Counsel as a prerequisite to any settlement.[4]  The record is similarly devoid of any

evidence of partial performance of the alleged "oral agreement" and of any evidence that all of

the material terms of such a contract have been agreed upon.  Finally, Plaintiff's Motion cannot

succeed under Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2d Cir. 1985)[5] because

the alleged agreement claimed by Plaintiff is clearly the type of contract that is

typically committed to writing.

Like the Motion itself, Plaintiff's claim for attorney's fees on the premise that Plaintiff

---

[4]     Plaintiff's claim that it is somehow significant that defense counsel did not insist upon a written settlement agreement during the parties' preliminary settlement discussions is a red herring.  Regardless of whether defense counsel insisted upon a written settlement agreement at the earliest conceivable opportunity, the record makes it clear that the right to be bound only by written settlement agreement was expressly reserved by the HPA long before any settlement agreement between the parties could have been finalized.

[5]     Hereafter "Winston."

should not have been compelled to pursue the Motion is specious.[6]  If any party is entitled to

attorney's fees, it is the HPA for being forced to oppose the enforcement of a purported

"agreement" of which there is no evidence in the record and the existence of which is belied by

Plaintiff's own correspondence and public documents readily available to Plaintiff.  Both the

Motion and Plaintiff's request for attorney's fees should be rejected, accordingly.

## II. <u>FACTS</u>

On May 10, 2004, Plaintiff and this Court were notified that any tentative agreement

reached during the settlement conference with United States Magistrate Judge Smith ("Judge

Smith") scheduled for May 12, 2004, was subject to approval by a vote of the entire HPA

board.  Letter from Jill Hartley to the Honorable Thomas P. Smith and to Eliot Gersten as a

carbon copy recipient, dated May 10, 2004, attached hereto as "Exhibit A."

On May 12, 2004, the parties participated in a Settlement Conference before Judge

Smith.  No settlement agreement and no agreement on <u>any</u> potential terms of a settlement was

reached on that date.

---

[6]     In apparent acknowledgment of the lack of any merit to Plaintiff's claims for attorney's fees, Plaintiff does not cite to any federal rule of civil procedure or statute in support of such claim.  Memorandum at p. 5.  Defendants reserve their right to brief this issue in response to any legal basis offered by Plaintiff in support of his request for attorney's fees in the unlikely event he prevails on his Motion.

At some point after the Settlement Conference, Plaintiff conveyed to Judge Smith that he would be willing to compromise the matter for the sum of $60,000.00 plus costs not to exceed $3,000.00.  Memorandum at p. 2.

Neither the HPA nor its counsel is aware of any communications during the "oral settlement discussions" regarding the consideration to be provided by Plaintiff to Defendants in the event the parties were able to agree upon a settlement figure.

On or about May 13, 2004, Corporation Counsel informed Judge Smith that he would present Plaintiff's demand of $63,000.00 to the HPA board and that he would recommend its acceptance of same.

According to Plaintiff's Memorandum, the parties' indirect "oral settlement discussions" concluded on or about May 17, 2004 with communications between Plaintiff and Judge Smith to which Corporation Counsel was not a party.  Memorandum at p. 2.

On May 19, 2004, the HPA board passed a resolution authorizing its Executive Director to settle this lawsuit for the sum of $60,000.00 plus costs not to exceed $3,000.00 through the execution of a written settlement agreement.  Resolution of the Hartford Parking Authority, dated May 19, 2004, attached hereto as "Exhibit B" (the "HPA Resolution").  The HPA Resolution makes it clear that the Executive Director's authority to enter into such a settlement, and Plaintiff's right to payment, are contingent upon both the execution of a settlement agreement "acceptable to the Corporation Counsel and the Executive Director of the HPA" and

- 5 -

the approval of the City Council.  Exhibit B.

On May 19, 2004, Plaintiff's counsel informed Corporation Counsel that the $63,000.00 compromise was acceptable to Plaintiff and suggested, for the first time, that Plaintiff "supply . . . a simple motion for dismissal with prejudice in exchange for the payments outlined above." Letter from Eliot Gersten to John Rose, dated May 19, 2004, attached hereto as "Exhibit C"; Memorandum at p. 2.

Later that day, Corporation Counsel responded by informing Plaintiff that settlement of the matter would require both City Council approval and the execution of a written settlement agreement.  Letter from John Rose to Eliot Gersten dated May 19, 2004, attached hereto as "Exhibit D."[7]

On May 24, 2004, the City Council passed a resolution authorizing the HPA board to settle the matter for the amount of $63,000.00 through execution of a settlement agreement. Resolution of the City Council dated May 24, 2004, attached hereto as "Exhibit E" (the "City Resolution").  Like the HPA Resolution, the City Resolution states that the HPA board's authority to enter into such a settlement, and Plaintiff's right to payment, are contingent upon the execution of a settlement agreement "acceptable to the Corporation Counsel and the Executive Director of the HPA."  Exhibit E.

---

[7]     Exhibit D was omitted from Plaintiff's submission.

Corporation Counsel then reported to Judge Smith that both the HPA board and the City Council had approved the settlement amount of $63,000.00.

On May 26, 2004, Plaintiff's counsel, by letter to Corporation Counsel, acknowledged the requirement that the settlement be effectuated by written instrument and offered to have Plaintiff execute a "simple" release to be drafted by defense counsel. Letter from Eliot Gersten to John Rose and Jill Hartley, dated May 26, 2004, attached hereto as "Exhibit F"; Memorandum at p. 2.

On May 28, 2004, Defendants' counsel provided Plaintiff with the Proposed Settlement Agreement and Release (the "Proposed Agreement"). E-Mail from John Shea to Eliot Gersten, dated May 28, 2004, and accompanying draft Settlement Agreement and Release, attached hereto as "Exhibit G". The Proposed Agreement provides that it is to be the only final and binding agreement between the parties, that it contains all obligations of the parties thereto, and that Plaintiff's right to payment of the settlement monies is contingent upon its execution. Exhibit G, Proposed Agreement, second Whereas clause, Paragraphs 3, 16, 20.

Thereafter, Plaintiff's counsel participated in negotiations with Defendants' counsel over three specific terms and conditions of the Proposed Agreement. Memorandum at pp. 2-3.

The parties ultimately reached an impasse in their settlement negotiations when Plaintiff refused to agree to a clause that would have prevented Plaintiff from applying to either the HPA or the City of Hartford for future employment. This is a term and condition of the settlement

agreement that Corporation Counsel deems appropriate.

During the pendency of the parties' negotiation over the language of the proposed settlement agreement, Plaintiff applied to the HPA for the vacant position of Controller, the same position from which he was terminated on September 15, 2003.

Plaintiff's Motion should be denied because there was never any oral agreement between the parties, let alone an oral agreement capable of binding the parties under <u>Winston</u>.

### III.  ARGUMENT AND AUTHORITIES

    **A.**    **Plaintiff's Claim That An Oral Settlement Agreement Somehow Arose Between The Parties On Or About May 17th Is Fatally Flawed Given The Absence Of Any Approval Of Such Agreement By The HPA Board Or The City Council And Given Plaintiff's Awareness That Such Approvals Were A Necessary Prerequisite To Any Binding Agreement.**

Boiled down to its essence, Plaintiff claims that the parties somehow reached an agreement on or about May 17th to settle the matter for $60,000.00 (with a partial reimbursement for expenses) in return for Plaintiff's mere dismissal of the case.  In purported support of this contention, Plaintiff claims that defense counsel did not insist, during the discussions before Judge Smith (the "oral settlement discussions"), upon a written settlement agreement or upon a no application clause.  Memorandum at pp. 4-5.

This claim is fatally flawed for several reasons.  First, Plaintiff was on notice that it was impossible for the parties, during these "oral settlement discussions", to reach any binding

- 8 -

agreement because any such agreement was subject to approval by the HPA board.  Exhibit A.[8]

Second, the "oral settlement discussions" culminated, not with any promise by the HPA to pay

Plaintiff $60,000.00 plus costs, but rather, with Corporation Counsel's mere representation that

he would submit Plaintiff's demand for same to the HPA board for its consideration.  Third,

whether or not defense counsel mentioned or insisted upon a release or specific provisions in a

release during the course of these preliminary discussions regarding a settlement amount is

irrelevant.[9]  Because there could not have been any meeting of the minds between the parties at

the time of the "oral settlement discussions," nothing that defense counsel did or did not say

during the course of same provides a basis for Plaintiff's Motion.[10]

---

[8]     Approval by City Council was also required.  See Exhibits B and E.

[9]     Indeed it would not have been an efficient use of the Court's or the parties' time
        to engage in hypothetical discussions regarding the requirement and content of a
        release in the event of a meeting of the minds between the parties as to the dollar
        amount of the settlement at a stage in the oral settlement discussions where the
        parties did not even know if they could agree upon such an amount.  See infra,
        Section III B. for a discussion as to when and how the HPA conditioned its
        approval of any settlement upon Plaintiff's execution of an acceptable written
        agreement.

[10]    Moreover, as the HPA's condition precedent to settlement has not been satisfied
        to date, there has never been a meeting of the minds sufficient to form an
        agreement.

**B.      In The Unlikely Event This Court Does Find That The Parties Reached An Oral Agreement, Plaintiff's Motion Must Nevertheless Be Denied Because The Parties Never Intended To Be Bound Absent A Written Agreement.**

In <u>Winston</u>, the Second Circuit Court of Appeals acknowledged that oral agreements may be enforced where it is readily apparent that the parties intended to be bound in the absence of a written agreement.  <u>Winston</u>, 777 F.2d at 80; <u>see also</u> <u>Ciamerella v. Reader's Digest Association, Inc.</u>,131 F.3d 320, 322 (2d Cir. 1997) (parties will not be bound by oral agreements unless they intended to be so bound).  The <u>Winston</u> Court identified four factors to be considered in determining whether parties intended to be bound by an oral agreement, including: (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract usually committed to writing.  <u>Winston</u>, 777 F.2d at 80.  As none of the four <u>Winston</u> factors exist here, Plaintiff's Motion is without merit and should be denied.

**1.      Plaintiff Has Not And Cannot Establish That The Parties Intended To Be Bound In The Absence Of A Written Agreement Given The HPA's Repeated Insistence, Directly And Through Counsel, Upon The Parties' Execution Of A Settlement Agreement And Plaintiff's Agreement To Provide Same So Long As It Was "Simple."**

A party seeking to satisfy the first <u>Winston</u> factor must show that there has been no express reservation of the right to be bound only by written agreement and that other

circumstances and actions of the parties indicate no such reservation has been expressed. Winston, 777 F.2d at 80-82; Conway v. Brooklyn Union Gas Company, 236 F.Supp.2d 241, 249 (E.D.N.Y. 2002).  Plaintiff cannot satisfy this factor because the HPA board clearly reserved its right to be bound only by written agreement before approving any such agreement and before it was authorized to do so by City Council.

Specifically, when the HPA board  first considered Plaintiff's demand to resolve the matter for $63,000.00, on May 19, 2004, it conditioned any settlement of the matter upon the execution of a written settlement agreement.  By letter of the same date, Corporation Counsel similarly advised Plaintiff that a settlement agreement, including formal release language, was a necessary prerequisite to any settlement.  Exhibit D.  Plaintiff acceded to the HPA's insistence upon a written agreement when he offered to execute a "simple" release drafted by defense counsel.  Exhibit F.  It was not until May 24, 2004 that City Council, in turn, approved the settlement contemplated in the HPA Resolution, at which time the City Council, like the HPA board, required that any settlement agreement be in written form.  Other circumstances similarly evidence the HPA's reservation of its right not to be bound absent a writing.  Namely, counsel for Defendants forwarded a copy of the Proposed Agreement, which purported to contain the entire agreement between the parties and expressly conditioned payment of any monies to Plaintiff upon the execution of the Proposed Agreement.  Exhibit G.  Thereafter, Plaintiff engaged in negotiations with Defendants over three specific terms and conditions of

- 11 -

the Proposed Agreement.  Memorandum at pp. 2-3.

In view of the HPA and City Council Resolutions, Defendants' correspondence to Plaintiff regarding the requirement of a written settlement, and the parties' subsequent conduct, Plaintiff cannot meet his burden under the first prong of Winston and his Motion should be denied, accordingly.  See Ciamerella, 131 F.3d at 80 (reservation of right to be bound only by written agreement found in oral agreement itself); Winston, 777 F.2d at 81-82 (reservation of right to be bound only by written agreement found in subsequent correspondence between the parties); Elements/Jill Schwartz, Inc. v. Gloriosa Company, 2002 WL 57260 (S.D.N.Y. 2002) (reservation of right to be bound only by written agreement found where parties' correspondence following settlement conference suggested parties did not consider case conclusively settled).

### 2.     Neither Party Has Engaged In Any Partial Performance Of The Purported Oral Agreement.

The second Winston factor requires proof by the proponent of an oral contract of partial performance of same.  Winston, 777 F.2d at 80, 82.  Here, Plaintiff has not alleged, and the record does not support, that either party has performed under the purported oral agreement. Specifically, the HPA has not made any payments to Plaintiff, and Plaintiff has not withdrawn or otherwise compromised his claims in this litigation.  In the absence of any evidence supporting partial performance or the existence of the other three Winston factors, the Motion

- 12 -

should be denied.

        **3.**      **<u>Regardless Of What Stage Of The Parties' Negotiations Is Examined By This Court, It Is Readily Apparent That The Parties Have Not Agreed Upon All Material Terms Of A Settlement.</u>**

The third <u>Winston</u> factor may be found where all of the terms of the alleged oral agreement have been agreed upon. <u>Winston</u>, 777 F.2d at 80, 82-83.

The utter absence of any meeting of the minds between the parties as to all material terms and conditions of the purported oral agreement during the course of the "oral settlement discussions" is evidenced by Plaintiff's own correspondence to Corporation Counsel. Although Plaintiff maintains that the parties somehow agreed to a settlement amount in return for Plaintiff's dismissal of the case, Plaintiff does not maintain that the parties ever discussed Plaintiff's dismissal of the case during the "oral settlement discussions." Memorandum at pp. 1-5. Indeed, Plaintiff's first proposal of a dismissal with prejudice is in correspondence from Eliot Gersten to John Rose dated May 19, 2004, after the conclusion of the "oral settlement discussions" on or about May 17, 2004. Memorandum at p. 2. This proposal was immediately rejected by John Rose (who responded with a letter insisting upon a settlement agreement and release) and by the HPA board (by its resolution).

The parties' failure to agree upon the language of the Proposed Agreement is further evidence that material terms remain to be negotiated. <u>See</u> <u>Ciaramella</u>, 131 F.3d at 325 (disagreement as to language in settlement agreement pertaining to letter of reference

- 13 -

constituted substantive term remaining to be negotiated for purposes of determining whether purported oral agreement contained all terms); <u>Winston</u>, 777 F.2d at 82-83 (even "minor" or "technical" points of disagreements in draft settlement documents are sufficient to forestall the conclusion that a final agreement on all terms had been reached).

In the absence of any evidence that the parties ever reached an agreement, during the "oral settlement discussions," as to the dollar amount of a settlement or the nature of the consideration to be provided by Plaintiff and given the parties' failure to agree upon the language of the settlement agreement, Plaintiff cannot satisfy the third factor of <u>Winston</u> and Plaintiff's Motion should be denied based on the record.

### C.     <u>Settlements Of This Nature Are Usually Committed To Writing.</u>

The fourth and final factor identified by the <u>Winston</u> Court may be satisfied where agreements of the nature at issue are not usually committed to writing.  <u>Winston</u>, 777 F.2d at 80.  Agreements to resolve litigation are normally committed to writing.  <u>See</u> <u>Ciaramella</u>, 131 F.3d at 326 (observing that settlements of any claim are generally required to be in writing).  This is especially true, where, as here, the amount of money at issue is significant ($63,000.00) and the terms carry into perpetuity.  <u>See</u> <u>Winston</u>, 777 F.2d at 83 (noting that nature, and amount ($62,500.00), of settlement payments and continuing obligations thereunder favor reducing agreement to writing).  As the <u>Winston</u> Court noted, "[w]here, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly

- 14 -

suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." <u>Winston</u>, 777 F.2d at 83.  Because the purported oral agreement that Plaintiff seeks to enforce was the type of agreement that is routinely reduced to writing and because there is no evidence supporting the remaining <u>Winston</u> factors, Plaintiff's Motion should be denied.

## IV.  <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff's Motion to enforce the alleged oral agreement, and his corresponding request for attorney's fees should be denied.

**DEFENDANTS, HARTFORD PARKING AUTHORITY, MERYTH DEAN WILLIAMS and SERAFIN MENDEZ MENDEZ**

By:_____
        Jill Hartley
        jhartley@sabiahart.com
        John P. Shea, Jr.
        Fed. Bar No. CT 17433
        jshea@sabiahart.com
        Sabia & Hartley, LLC
        190 Trumbull Street, Suite 202
        Hartford, CT 06103
        Tel: (860) 541-2077
        Fax: (860) 713-8944

**<u>CERTIFICATION</u>**

I hereby certify that a copy of the foregoing was sent this 25th day of June, 2004, via hand delivery, to:

Jonathan L. Gould, Esq.                          Eliot B. Gersten, Esq.
214 Main Street                                        Gersten & Clifford
Hartford, CT 06106                                  214 Main Street
                                                              Hartford, CT 06106


and via first class mail, postage prepaid, to:

John Rose, Jr., Esq.
Corporation Counsel
City of Hartford
550 Main Street, 3rd Floor
Hartford, CT 06103


                                              _____
                                              Jill Hartley


E:\WPDOCS\HartfordParking\Parker\opp.mot.enforcement.III.wpd

- 16 -